UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:06CR405 CDP |
| | ) | |
| TOMMIE WEBB, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). This memorandum relates to the Defendant's motion to suppress electronic surveillance or wiretap evidence.

<u>The Court Authorized Title III Wiretap</u>

Based upon the findings of fact, the undersigned concludes that the evidence obtained from the wiretap in the case now at bar was lawfully obtained and should not be suppressed.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. § 2510, et seq., and its progeny provide for the interception of wire, oral, and electronic communications under certain circumstances. Under this statute, an order for electronic surveillance may be entered by a United States District Judge upon the application of a federal law enforcement officer who has been authorized to make such application by the United States Attorney General or his authorized designee. An authorization for such application is presumed to be valid, unless the person challenging the application makes a prima facie showing that it was not so authorized. See <u>United States v. O'Connell</u>, 841 F.2d 1408, 1416 (8th Cir. 1988). The application must include a full

and complete description of the facts relied upon including the details of the alleged offense; the description of the facilities where the communications are to be intercepted; a description of the communications sought to be intercepted; the identity of the persons known whose communications will be intercepted; whether other investigative procedures had been tried, and the period of time for which the interception is requested. The application must also include whether previous applications involving the same facilities, persons, or places have been made. 18 U.S.C. § 2518(1). The application here contains all of the statutorily required material. The applications were made by an Assistant United States Attorney and they contain an authorization from an Assistant Attorney General designated to make such authorizations; they include the identifying items required regarding the persons, places, communications to be intercepted; and they also state that the communications would be intercepted for no more than thirty days. There was no error in the form of the application.

Under 18 U.S.C. § 2518(3), the court may issue an order only if it finds probable cause to believe that 1) a person is committing one of the crimes enumerated in 18 U.S.C. § 2516; 2) the communications concerning such offense will be obtained through the interception, and 3) the place where the communications are to be intercepted is being used in connection with the commission of such offense. Review of the evidence reveals that probable cause has been shown for each of the above three items. The probable cause required for a wiretap order "does not differ from that required by the Fourth Amendment for a search warrant." United States v. Macklin, 902 F.2d 1320, 1324 (8th Cir. 1990). See also United States v. Leisure, 844 F.2d 1347, 1354 (8th Cir. 1988). As stated in Macklin, supra:

> The task of the issuing magistrate judge is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him,

including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis. . .for conclud[ing]' that probable cause existed.

Macklin, 902 F.2d at 1324.

In the case now at bar, the undersigned concludes that the affidavit provided in support of the wiretap provided an ample basis for a finding of probable cause to issue the wiretap order. Indeed, as outlined in the statement of facts from the bottom of page 1 to the middle of page 8, the affidavit provides overwhelming information and probable cause for the issuance of the wiretap. As stated, most of the details of the affidavit in support of the wiretap are contained in the findings of fact through the middle of page 8 in said findings. In summary, the affidavit contains the following pertinent information:

A reliable informant known as CS #5, provided information on Ramon Martinez's drug operation, including Martinez's use of cellular telephones. CS #5 had been personally involved with Martinez having been locked up with him in the federal penitentiary. The informant further has worked for Martinez's drug operation, including finding an individual in Pontiac, Michigan, who owed $600,000 on a past drug debt to Martinez. The informant was aware that Martinez always carried two cellular telephones, one of which was a prepaid track cellular telephone used only for narcotics business, and the other one used for legitimate family business. The prepaid cellular telephones used for narcotics business were discarded on a regular basis and new ones were purchased. Further, both the informant and other informants were aware that Martinez, along with changing cellular telephones often, also handed out cellular telephones to member of his drug trafficking organization, and made sure that his co-conspirators communicated with him only on those

telephones which he handed out. Further, in September, 2005, Agent Johnson, (the affiant in this case) had the confidential informant place a telephone call to Martinez at a cellular telephone that Martinez previously used to contact another co-conspirator, Michael Salzman. The confidential informant talked to a person who identified himself as "Junior," a nephew of Martinez, who told him that Martinez had given him the cellular telephone and was using another cellular telephone. The confidential informant told Junior that he wanted to talk to Martinez and asked if Martinez could call him. The next day, September 13, 2005, Martinez called the informant using target telephone #8, the telephone upon which wiretap authorization was being sought. Martinez told the informant that he would call him back the next day, that he had some business he wanted him to conduct. Between September 15 and 18, 2005, Martinez called the confidential informant several times using target telephone #8. In these conversations, Martinez gave the informant the name of a person of Panamanian descent who lived in Atlanta, Georgia, who Martinez wanted the confidential source to find and collect money from. The money was owed to Martinez as part of a drug debt. Also, on September 18, 2005, Martinez told the confidential source that he wanted him to travel to McAllen, Texas, later that week to discuss the matter in person and not over the telephone. Further, on September 25, 2005, Ramon Martinez utilizing target telephone #8 called co-conspirator Michael Salzman, who at that time was using a telephone upon which there was a legal wiretap. During this telephone conversation, Martinez told Salzman that he had cocaine and marijuana for Salzman and would be enroute to St. Louis during the following week. Salzman told Martinez that once they sold the narcotics, it would assist Martinez and Salzman in overcoming money problems that they had with the payment of narcotics. Further, Agent Johnson's investigation of pen registers on target telephone #8 obtained by court order revealed that target telephone #8 been used to make numerous contacts

with other telephones used by individuals who the agents knew to be in the Martinez drug organization, including obviously the above contact with Michael Salzman.

Based on the above, the undersigned concludes that there is at least a "fair probability" that target telephone #8 was being used to transact drug business of the Martinez drug organization, and that a wiretap of that telephone would lead to evidence which would further that investigation. See Macklin, supra. The agents were aware that just three days before the wiretap was authorized, Martinez used target telephone #8 for the purpose of setting up a drug transaction with Michael Salzman. Therefore, the undersigned concludes it was reasonable to assume that the wiretap of Martinez's telephone would identify other co-conspirators in the case, and would provide evidence on these other co-conspirators including the Defendant Tommie Webb.

Necessity

Under 18 U.S.C. § 2518, the court, prior to issuing a wiretap authorization, must also find that normal investigative procedures have been tried and have failed, or reasonably appear unlikely to succeed if tried, or that they appear to be too dangerous. In order to find that normal investigative techniques are inadequate, the court need not find that the Government has exhausted all conceivable normal investigative techniques. See United States v. Macklin, 902 F.2d 1320, 1326-27 (8th Cir. 1991); United States v. Smith, 909 F.2d 1164 (8th Cir. 1991). "The government is simply not required to use a wiretap as a last resort." See Macklin, 902 F.2d 1320, 1327.

In United States v. Maxwell, 25 F.3d 1389 (8th Cir. 1994), the court stated as follows:

> Officers had not been able to determine from other investigative methods the scope of the suspected conspiracy or to develop enough evidence to successfully prosecute the suspects whom they had identified.

United States v. Maxwell, 25 F.3d at 1394.

Even where conventional investigative techniques had been somewhat successful, a wiretap may still be authorized. See United States v. O'Connell, 841 F.2d 1408 (8th Cir. 1989). Particularly in regard to a drug case, the court has stated as follows:

> Drug crime is necessarily harder to detect than other crimes because it is difficult to witness and does not create victims who are compelled to come forward and report the crime.

United States v. Milton, 153 F.2d 891, 895 (8th Cir. 1998).

Given the above, the undersigned concludes that the affidavit stated ample necessity for the wiretap. The affidavit states the objectives of the investigation as follows:

> The objectives of this investigation are to identify the entire scope of the DTO, including sources of supply outside the Eastern District of Missouri; to identify the principal upper echelon members of the DTO; to identify where and when the leaders of the DTO meet with their sources; to identify how drugs are coming into Missouri; to identify where the drugs and money are being stored; to fully identify all participants in the conspiracy; and to determine the manner in which the DTO launders its proceeds.

Paragraph 73 of the affidavit.

The affidavit details how several standard investigative techniques have been tried and have failed to reveal the full scope of the drug trafficking organization, including that they had failed to identify Martinez's source of drugs; the exact method by which he transports narcotics and where he transports them to specifically, exactly where his narcotics are stored both in Texas and in other places; whether or not Martinez transports drugs across the Mexican border in McAllen, Texas; the exact identification of all members of Martinez's drug trafficking organization, and how the money from the drug trafficking organization is laundered.

The affidavit goes through each investigative technique and explains how they are less than satisfactory. For example, as far as physical surveillance is concerned, although Agent Johnson states

that the surveillance led to the seizing of $42,000 in suspected drug proceeds and the drug ledger, it did not identify all of the members of the operation, and failed to reveal the entire scope of the operation. In addition, although the agents were able to witness meetings between Ramon Martinez and Tommie Webb and other people, they did not know what occurred during those meetings. In addition, as far as physical surveillance was concerned, Martinez used evasive techniques, and therefore it was difficult to conduct physical surveillances. As far as search warrants are concerned, Agent Johnson stated that agents did not have probable cause to search any location associated with Martinez which included the specific location of any safe houses in Arkansas, or in other places such as Atlanta, Georgia and Chicago, Illinois. Further, agents were unable to identify the exact vehicles in which the drugs were being transported, and therefore could not search them. In addition, as to the use of confidential informants, Agent Johnson stated that although confidential source #5 was able to provide information on the Martinez organization and cellular telephones, the informant could not supply information as to the main storage facilities utilized by Martinez; the transportation times and locations of the drugs; the sources of supply to Martinez; where the money was laundered, nor could he provide details as to all members of the organization and what states in which they operated.

As to the interviewing of witnesses and grand jury testimony, Johnson explained that people who might be used as witnesses such as Merced Rodriquez initially cooperated and then like Rodriguez would disappear. It should be noted that contrary to what the Defendant argued at the motion to suppress, the Merced Rodriquez situation does not show that the agents were dilatory in obtaining Merced Rodriguez's cooperation. To the contrary, they went to Arkansas the very morning after they were notified that Rodriquez was cooperating, and Rodriquez had already absconded. If

anything, Rodriquez's absconding shows that this normal investigative technique did not work, and, therefore, adds to the necessity for a wiretap.

Based on all of the above, the undersigned concludes that the necessity for the wiretap was amply shown by the affidavit. As stated above, all investigative techniques need not be exhausted before a wiretap is applied for, and "officers had not been able to determine from other investigative methods the scope of the suspected conspiracy or to develop enough evidence to successfully prosecute the suspects." See United States v. Maxwell, 25 F.3d at 1394. Exactly the same situation exists in the case now at bar, therefore, the wiretap was proper.

Minimization

Additionally, Title III includes certain post-authorization duties, including objectively reasonable efforts to minimize any unauthorized interceptions. 18 U.S.C. § 2518(5); see United States v. Smith, 909 F.2d at 1167.

> In considering whether the government's conduct was reasonable, the reviewing court must consider a variety of factors including the scope of the enterprise, the agent's reasonable expectation of the content of a call, the extent of judicial supervision, length and origin of a call, and the use of coded or ambiguous language. More extensive wiretap is reasonable when the investigation focuses on determining the scope of a widespread conspiracy. The same is true when conversations are in jargon of the drug trade. Thus, the government's conduct could be reasonable even if the total number of conversations intercepted contained a high percentage of non-pertinent calls.

United States v. Macklin, 902 F.2d at 1328.

In the case now at bar, the Assistant United States Attorney provided the agents with detailed directions both orally and in writing as to proper minimization procedures. Each monitoring agent and each translator had to read and did read the procedures, and signed a statement stating that he had read and understood the minimization procedures. In addition, the interpreters were separately

8

instructed by the Assistant United States Attorney, and also read the minimization procedures. The minimization procedures were posted at all times in the monitoring room for easy reference of the agents. Thus, the agents were properly instructed as to minimization procedures. In addition, as can be seen from the affidavit, much of the conversation involved in the wiretaps and consensual monitorings were done in jargon of the drug trade or in code. Further, many of the conversations were in the Spanish language. Thus, more widespread monitoring would have been reasonable given the use of jargon and the use of the Spanish language.

Further, the affidavit and the evidence both show that Martinez and his organization used the prepaid track cellular telephones, upon which the wiretap was placed, soley to conduct their drug business. Therefore, most, if not all, of their calls would be pertinent, and the ability to minimize would be slight. In the context of the this investigation where the telephones were used almost exclusively for co-conspirators talking among each other, the undersigned concludes that a small amount of minimization was objectively reasonable. Although the Defendant alleges that there were calls which should have been minimized, he presented no evidence nor pointed to any call that should have been minimized and that was non-pertinent or privileged. Therefore, absent a more specific complaint, the undersigned concludes that the agents complied with the minimization requirement of the statute, and that their minimization was objectively reasonable. See United States v. Homick, 964 F.2d 899, 903 (9th Cir. 1992); United States v. Ozar, 50 F.3d 1440, 1447-48 (8th Cir. 1995). Therefore, the undersigned concludes that the minimization procedures were proper, and the monitoring of the court authorized wiretap was reasonable.

## Conclusion

Therefore, the wiretapped conversations should not be suppressed.

* * *

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Contents of any and all Electronic Surveillance (Doc. #18–dated 8/11/06) be **denied**.

Further, as to the motion to suppress above, the parties are advised that they have eleven (11) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990)

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of December, 2006.